Filed 8/15/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHN ALVES SANTOS,<br><br>    Defendant and Appellant. | H045518<br>(Santa Clara County<br>Super. Ct. No. C1758098) |

Defendant John Alves Santos was arrested in connection with a stolen vehicle report. He pleaded no contest to vehicle theft with a prior conviction, possession of methamphetamine, possession of burglary tools, and buying or receiving a stolen motor vehicle with a prior conviction, and admitted one prison prior. The trial court sentenced Santos to two years in state prison and imposed specified fees and fines.

Santos's appointed counsel filed an opening brief in which no issues are raised and asked this court to independently review the record under *People v. Wende* (1979) 25 Cal.3d 436. We sent a letter to Santos notifying him of his right to submit written argument on his own behalf on appeal but received no response.[1] After independent review of the record, we requested supplemental letter briefs from Santos's counsel and the Attorney General in light of *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). In *Dueñas*, Division 7 of the Second Appellate District applied due process principles to

---

[1] Our records show that our letter advising Santos of his right to submit argument was returned as undeliverable. We have confirmed with Santos's counsel that the address on file for Santos matches the address in his counsel's file. His counsel has declared that she notified Santos of her intention to request independent review under *Wende* and of his right to file written argument on his own behalf.

prohibit the imposition of certain fees and a restitution fine upon an indigent defendant without first ascertaining the defendant's ability to pay the amount imposed. We asked counsel in this case (1) whether the trial court erred in imposing any fines or fees without determining Santos's ability to pay, (2) whether Santos forfeited any claim of error by failing to object, or waived his right to contest the fines as part of his plea agreement, and (3) if the matter is not forfeited, what is the appropriate remedy on appeal.

We hold that the failure to object to the assessments discussed below did not forfeit the claim of error on appeal. We also conclude that while the record in this case does not reflect such extreme circumstances as were present in *Dueñas*, in which the defendant's poverty precipitated a cycle of repeat, misdemeanor offenses which "in turn, . . . occasioned new fines, fees, and assessments that she" could not pay (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1164), the principles articulated therein still apply.[2] Given the divergence of opinions issued by the Courts of Appeal since *Dueñas*, we believe that some guidance to the trial court is appropriate and try to provide it here. We will order a limited remand for the trial court to ascertain Santos's ability to pay the court operations assessment under Penal Code section 1465.8 and the criminal conviction assessment under Government Code section 70373.

---

[2] Our dissenting colleague believes that *Dueñas* was wrongly decided. We recognize the broad ramifications of the *Dueñas* decision. We share our colleague's concern about any improvident or unwarranted extension of constitutional principles. Yet because we believe that *Dueñas* realistically and correctly assessed the disproportionate burden that the accumulation of fines has on the very poor—at times transforming what might be merely "associated collateral consequences" (dis. opn., p. 6) for those who *can* pay into a form of additional punishment for those who *cannot* pay— we apply its holding here.

2

## I. FACTUAL AND PROCEDURAL BACKGROUND

San Jose police officers apprehended Santos on February 28, 2017, in connection with a stolen vehicle report.[3] The victim reported that at approximately 1:00 p.m. he saw a male (later identified as Santos) driving the victim's previously stolen vehicle near a gas station on Alum Rock Avenue in San Jose. The victim unsuccessfully tried to follow the vehicle. Later that afternoon, the victim contacted the police and said that he had located his vehicle at the gas station and would wait for the police to arrive. Shortly after, he called the police again to say that the same individual he had seen driving his vehicle had returned. Santos was walking away from the stolen vehicle as the police arrived. The victim identified Santos in an in-field identification.

During a pat down search, police found a baggie of methamphetamine and a set of keys. Santos said that the keys were his, though he could not explain one key, which looked like an ignition key to a foreign car and appeared to have been tampered with. Officers tried the key in the ignition of the victim's car, and the car started. Santos also was carrying a backpack in which the police found a set of fuses—one of which matched a yellow fuse connected to wiring that was hanging from under the victim's steering wheel, and numerous screwdrivers, wire cutters, vise grips, and keys.

The Santa Clara County District Attorney charged Santos in an information filed on May 18, 2017, after a preliminary examination, with vehicle theft with a prior conviction, a felony (Veh. Code, § 10851, subd. (a), Pen. Code, § 666.5; count 1), misdemeanor possession of a controlled substance, methamphetamine (Health & Saf. Code, § 11377, subd. (a); count 2), misdemeanor possession of burglary tools (Pen. Code, § 466; count 3), and buying or receiving a stolen motor vehicle with a prior conviction

---

[3] The facts summarized here are taken from the probation report filed on January 26, 2018 and from the preliminary hearing testimony of May 10, 2017.

3

(Pen. Code, §§ 496d, 666.5; count 4). The information also alleged one prison prior within the meaning of Penal Code section 667.5, subdivision (b).

Santos pleaded no contest to all four counts and admitted the prison prior. He initialed and signed the advisement of rights, waiver, and plea form, which provided for a nonbinding, tentative indicated sentence in the range of probation to a maximum of three years in prison. The signed agreement reflects a handwritten modification to the standard language concerning the imposition of fines and fees. Paragraph 18, which Santos initialed, states the defendant's understanding of the fines, fees, and costs that may be imposed, including certain mandatory fines and fees, and others depending upon the ability to pay. The standard plea form language concludes with the statement "and I do not contest my ability to pay these fines and fees," but here that sentence was partially stricken and rewritten as, "*and I have discussed these fines and fees with my attorney.*" (Italics added.)

On January 26, 2018, the trial court sentenced Santos consistent with the plea agreement. The court denied probation as to all counts. It imposed the mitigated two-year prison term on count 1 and a concurrent two-year term on count 4, which it stayed pursuant to Penal Code section 654. The court imposed a 90-day jail sentence for counts 2 and 3, concurrent to count 1, and struck the enhancement for the prison prior. Santos received 452 days of credit, comprising 226 actual days and 226 days of conduct credit.

At sentencing, Santos's counsel asked the trial court to "run any fines and fees concurrent to the time it's going to impose" because Santos "is indigent" and probation had recommended "quite a large fine" of $1,800 in restitution. The trial court instead imposed a restitution fine of $300, plus an additional, suspended parole revocation fine of $300 (Pen. Code, §§ 1202.4, subd. (b)(2), 1202.45). The court further imposed a $4 emergency medical air transportation fine (Gov. Code, § 76000.10), an $80 court operations assessment (Pen. Code, § 1465.8), a $60 criminal conviction assessment (Gov.

Code, § 70373), and a $129.75 criminal justice administration fee (Gov. Code, §§ 29550, 29550.1, 29550.2). The court waived fees in connection with counts 2 and 3.

Santos did not object to the imposition of the fines and fees.

On January 29, 2018, Santos filed a timely notice of appeal from the judgment.

## II. DISCUSSION

In supplemental briefing, both parties assert that under the reasoning articulated in *Dueñas*, *supra*, 30 Cal.App.5th 1157, the trial court should not have imposed the $80 court operations assessment and $60 criminal conviction assessment without first determining Santos' ability to pay, since the record reflects that he was indigent at the time of sentencing. They further agree that the matter is not forfeited for failure to object and should be remanded for the limited purpose of determining ability to pay.

While Santos's briefing addresses only the court operations and criminal conviction assessments under Penal Code section 1465.8 and Government Code section 70373, the Attorney General also tackles the $300 restitution fine. The Attorney General argues that the restitution fine is distinguishable because it is a fine for punishment, and the proper analytic framework for evaluating it is not due process as expressed in *Dueñas*, but the excessive fines clause of the Eighth Amendment of the United States Constitution. We need not reach that issue, however, because Santos does not raise the restitution fine in his supplemental briefing.[4] We limit our analysis to the

---

[4] We note for completeness that at least two recent opinions have addressed whether the excessive fines clause provides a more proper basis to evaluate the constitutionality of the fine or fee imposed. (See *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1034 (conc. opn. of Benke, J.) [disagreeing with *Dueñas*'s general application of due process and equal protection principles to the statutory assessment of fines and fees, which instead should be analyzed under the excessive fines clauses of the Eighth Amendment of the federal Constitution and of article I, section 17 of the California Constitution]; *People v. Kopp* (2019) __ Cal.App.5th __ [2019 Cal.App. Lexis 698] at *77-*78 [holding there is no due process requirement for an ability-to-pay hearing before imposing a *punitive* fine, thus the restitution fine must be challenged under (continued)

5

question of whether the trial court was required, under the reasoning of *Dueñas* and in light of the record of indigence present here, to determine Santos's ability to pay the court operations and criminal conviction assessments before imposing them.

### A. *Dueñas*

The Court of Appeal in *Dueñas* examined how the "cascading consequences of imposing fines and assessments that a defendant cannot pay" (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1163) can interfere with an indigent defendant's fair treatment under the law by in effect punishing the defendant for being poor (*id*. at pp. 1166-1167).

The case involved a homeless probationer whose inability to pay the juvenile citations she received as a teenager resulted in the suspension of her driver's license, which later led to several misdemeanor convictions for driving with a suspended license. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1161.) Facing the "ostensible choice of paying a fine or serving jail time in lieu of payment," Dueñas served time yet remained liable for mounting court fees, which she could not pay. (*Ibid*.) Upon her fourth misdemeanor conviction, the trial court placed Dueñas on probation and, as mandated by statute, imposed a court operations assessment (Pen. Code, § 1465.8), a criminal conviction assessment (Gov. Code, § 70373), and a $150 restitution fine (Pen. Code, § 1202.4). (*Dueñas*, *supra*, at p. 1162.) The trial court rejected Dueñas's constitutional argument that due process required the court to assess her present ability to pay before it imposed the fees. (*Id*. at p. 1163.)

The Court of Appeal reversed. It held that imposition of the court operations and criminal conviction assessments without first ascertaining an indigent defendant's present ability to pay violates state and federal due process guarantees. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1168.) The court also directed the trial court to stay execution of the

the excessive fines clauses of both the federal and state Constitutions]; *id*. at *81-*82 (conc. opn. of Benke, J.).)

6

mandatory restitution fine unless and until the People establish the defendant's ability to pay. (*Id*. at p. 1172.)

The Court of Appeal observed that the assessments at issue were enacted to raise funds for the state courts and were not intended to be punitive. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1165.) Yet the consequences of mounting criminal justice debts from unpayable fines "in effect transform a funding mechanism for the courts into additional punishment for a criminal conviction for those unable to pay." (*Id*. at p. 1168.) Relying on constitutional principles of fair and equal treatment before the law for indigent defendants, as articulated in decisions like *Griffin v. Illinois* (1956) 351 U.S. 12, *In re Antazo* (1970) 3 Cal.3d 100, and *Bearden v. Georgia* (1983) 461 U.S. 660, the court deemed such assessments "fundamentally unfair" if imposed without a determination that the defendant has the present ability to pay. (*Dueñas*, *supra*, at p. 1168.)

As for the restitution fine, the Court of Appeal recognized that unlike court operations and criminal conviction assessments, a restitution fine is intended as additional punishment for a crime. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1169.) It is imposed in a range determined by statute and commensurate with the seriousness of the offense (Pen. Code, § 1202.4, subd. (b)). (*Dueñas*, *supra*, at p. 1169.) The statute expressly disqualifies inability to pay as a basis for waiving the restitution fine, though a court may consider a defendant's ability to pay if imposing a restitution fine above the statutory minimum amount. (*Id*. at p. 1170, citing Pen. Code, § 1202.4, subds. (c), (d).)

Finding these provisions at odds with statutory policy requiring restitution to "be consistent with a person's ability to pay" (Pen. Code, § 1203.2, subd. (a)) and with common law principles requiring consideration of a defendant's financial condition when imposing a punitive award, the court also observed that an indigent defendant is not afforded equal relief upon completing probation as a defendant who can pay his or her restitution fine. (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1170-1171, citing Pen. Code, § 1203.4, subd. (a)(1).) The court concluded that such "limitation of rights to those who

7

are unable to pay" is fundamentally unfair.  (*Dueñas*, *supra*, at p. 1171.)  To avoid a constitutional dilemma, the court held that while required by Penal Code section 1202.4 to impose a restitution fine, the trial court must stay execution of the fine "until and unless the People demonstrate that the defendant has the ability to pay the fine." (*Dueñas*, *supra*, at p. 1172.)

> **B**.    ***Santos Has Not Forfeited His Challenge Concerning Ability to Pay***

Several Courts of Appeal have issued decisions since *Dueñas*, revealing a split as to whether a defendant whose sentencing preceded *Dueñas* forfeits a challenge to the imposition of fines and fees on the basis of inability to pay by having failed to object in the trial court.  The question as to forfeiture is whether *Dueñas* represents an unforeseen significant shift in the pertinent law that trial counsel could not have anticipated, thus excusing the failure to raise the issue.  (See *People v. Black* (2007) 41 Cal.4th 799, 810 ["although challenges to procedures . . . normally are forfeited unless timely raised in the trial court, 'this is not so when the pertinent law later changed so unforeseeably that it is unreasonable to expect trial counsel to have anticipated the change' "].)

In *People v. Castellano* (2019) 33 Cal.App.5th 485 (*Castellano*), the same appellate division that decided *Dueñas* declined to find forfeiture, citing the recognized exception to the forfeiture rule based upon a "newly announced constitutional principle that could not reasonably have been anticipated at the time of trial . . . ."  (*Id*. at p. 489.) *Castellano* explained that because "no California court prior to *Dueñas* had held it was unconstitutional to impose fines, fees or assessments without a determination of the defendant's ability to pay," an objection on that ground would have been futile.  (*Ibid*.) Since the record contained no evidence regarding the defendant's ability to pay the challenged assessments and restitution fine, the court remanded to the trial court for a limited hearing on the ability to pay.  (*Id*. at pp. 490-491.)

8

*People v. Johnson* (2019) 35 Cal.App.5th 134 relied on the same exception to the forfeiture doctrine based upon a change in the law. *Johnson* noted that while *Dueñas* is founded on longstanding constitutional principles, the statutes at issue "were routinely applied for so many years without successful challenge [citation], that we are hard pressed to say its holding was predictable and should have been anticipated." (*Id*. at p. 138.) But in *Johnson*, unlike in *Castellano*, the court concluded that any error in the trial court's imposition of fines, fees, and assessments without first determining the defendant's ability to pay was harmless because evidence in the record (like the defendant's past income-earning capacity and ability to earn prison wages over his lengthy term of incarceration) demonstrated an ability to pay. (*Id*. at p. 139.)

Other recent appellate court decisions have declined to apply this exception to the forfeiture doctrine. In *People v. Frandsen* (2019) 33 Cal.App.5th 1126, the court explained that given its application of long-established principles, *Dueñas* did not represent an unforeseen, dramatic departure from established law. (*Id*. at pp. 1153-1155; accord *People v. Bipialaka* (2019) 34 Cal.App.5th 455.)

Santos urges this court to follow *Castellano* and *Johnson*. He argues that at the time of his sentencing, trial counsel had no legal precedent to support an argument based on inability to pay. Santos requests a limited remand to the superior court for a hearing in which he can present evidence of his inability to pay the fees. The Attorney General concedes that a limited remand is appropriate for a determination of Santos's ability to pay the court operations and criminal conviction assessments.

We agree that prior to *Dueñas*, it was not reasonably foreseeable that a trial court would entertain an objection to assessments that are prescribed by statute. The standard is "the 'state of the law as it would have appeared to competent and knowledgeable counsel at the time of the trial.' " (*People v. Black*, *supra*, 41 Cal.4th at p. 811.) Santos's sentencing occurred about one year before *Dueñas* was decided. Neither Penal Code section 1465.8 nor Government Code section 70373 authorized the trial court to

9

factor a defendant's ability to pay in imposing the assessments; absent compelling circumstances like those affecting the defendant in *Dueñas*, an objection on that basis would probably have been futile. *Dueñas* for the first time applied due process principles to evaluate the punitive impact of the assessments, which in prior cases had been analyzed strictly as nonpunitive administrative assessments for court funding (see *People v. Alford* (2007) 42 Cal.4th 749, 755-759; *People v. Castillo* (2010) 182 Cal.App.4th 1410, 1412-1415). As the California Supreme Court has recognized, "[t]he circumstance that some attorneys may have had the foresight to raise th[e] issue does not mean that competent and knowledgeable counsel reasonably could have been expected to have anticipated" it. (*People v. Black*, *supra*, at p. 812.)

What is more, unlike cases in which the defendant's financial status never entered the trial record, Santos's trial counsel objected to the probation department's recommended restitution fine based on his indigence. The court reduced the fine to the minimum amount, consistent with its statutory authorization to consider inability to pay only when increasing the amount of the restitution fine in excess of the minimum. (Pen. Code, § 1202.4, subds. (c), (d).) Santos's handwritten modification of paragraph 18 of the plea agreement to remove language stating that he did not contest his ability to pay those fines, fees, or assessments for which the court may consider ability to pay, further indicates that Santos did not intend to waive any argument contesting his ability to pay.

We conclude that Santos's claim on appeal, based upon inability to pay under the principles established in *Dueñas*, is not forfeited by the failure to object on that basis at sentencing.

## C. *The Record Supports a Limited Remand for an Ability-to-Pay Determination*

The parties appear to agree on the merits that in accordance with the principles announced in *Dueñas*, the trial court should not have imposed the court operations and criminal conviction assessments without first determining Santos's ability to pay, since

10

the record shows that he was indigent at the time of sentencing.[5]  Both sides propose that the matter should be remanded for an ability-to-pay determination.

The record in this case establishes that Santos was indigent at the time of sentencing.  He was represented by the public defender at trial—a fact that while not determinative, entitles him "to a presumption of indigence for most purposes."  (*People v. Rodriguez* (2019) 34 Cal.App.5th 641, 645.)  As noted above, Santos's trial counsel objected to imposition of a restitution fine in excess of the minimum statutory amount on the basis of his indigence.  And according to the probation record, Santos is homeless and unable to sustain employment or find housing.  He is diagnosed with bipolar disorder and schizophrenia, which require daily medications, and suffers from a back injury, for which he receives $800 per month in Social Security benefits.

On this record, we might infer an inability to pay even the limited amount remaining at issue, consisting of the $80 court operations assessment (Pen. Code, § 1465.8) and $60 criminal conviction assessment (Gov. Code, § 70373).  (We do not consider the $300 restitution fine, for which Santos has not raised a claim in his supplemental briefing.)  But given the range of relevant considerations in determining whether the defendant is able to pay, we decline to make that determination.  We accordingly remand the matter to the trial court so that Santos may request a hearing and present evidence demonstrating his contended inability to pay the assessments.

We offer two additional points as guidance to the trial court and the parties upon remand.  First, we agree with the majority's observation in a recently-filed opinion by Division 1 of the Fourth District, that it is the defendant's burden to demonstrate an

_____

[5] The Attorney General supports this proposition only as far as it applies to assessments enacted as funding sources for court programs and imposed on defendants who cannot pay—a practice the Attorney General describes in supplemental briefing as "unwise and unfair."  To this end, the Attorney General expresses support for a legislative solution, as proposed in *Dueñas*, *supra*, 30 Cal.App.5th at page 1172.

11

inability to pay, not the prosecution's burden to show the defendant *can* pay, as the *Dueñas* decision might be read to suggest. (See *People v. Kopp*, *supra*, __ Cal.App.5th ___ [2019 Cal.App. Lexis 698 at *76]; cf. *Dueñas*, *supra*, 30 Cal.App.5th at p. 1172.) This is consistent with the *Castellano* court's interpretation of *Dueñas* as requiring a defendant to "contest in the trial court his or her ability to pay the fines, fees and assessments to be imposed and at a hearing present evidence of his or her inability to pay the amounts contemplated by the trial court." (*Castellano*, *supra*, 33 Cal.App.5th at p. 490.)

We also agree with the majority in *People v. Kopp* that in weighing the defendant's ability to pay the fee at issue, the trial court may consider, if applicable, the defendant's ability to earn wages such as while serving his or her prison sentence. (*People v. Kopp*, *supra*, __ Cal.App.5th ___ [2019 Cal.App. Lexis 698 at *77]; accord *Castellano*, *supra*, 33 Cal.App.5th at p. 490 [factors may include potential prison pay during the period of incarceration to be served by the defendant].) Although *Dueñas* holds that the trial court must evaluate a defendant's "*present* ability to pay" the fee (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1164, italics added), that term should not restrict the trial court's reasonable consideration of relevant factors. Such factors may include housing status, mental illness or disability, receipt of government benefits, and realistic ability to earn prison wages or obtain employment.[6]

---

[6] *Castellano*, *supra*, 33 Cal.App.5th at page 490 states that the court "must consider all relevant factors in determining" the defendant's ability to pay. It references pending legislation that proposes factors to be considered in determining a defendant's ability to pay, including by way of example present financial circumstances, receipt of any government benefits, whether represented by court-appointed counsel, and the defendant's likelihood of obtaining employment within a six-month period. (*Id*. at p. 490, fn. 5, citing Assem. Bill No. 927 (2019-2020 Reg. Sess.) § 1.)

### III.    DISPOSITION

The judgment is reversed and the matter is remanded for the limited purpose of affording Santos the opportunity to request a hearing on his ability to pay assessments imposed by the trial court.  If Santos demonstrates the inability to pay, the trial court must strike the court operations assessment (Pen. Code, § 1465.8) and the criminal conviction assessment (Gov. Code, § 70373).  If he fails to demonstrate his inability to pay these amounts, the assessments may remain as imposed.

_____
                                 Premo, J.

I CONCUR:

_____
             Greenwood, P.J.

People v. Santos
H045518

ELIA, J., Dissenting

The majority reverses and remands to allow defendant John Alves Santos to request a hearing as to his ability to pay the court operations assessment (Pen. Code, § 1465.8, subd. (a)(1)) and the court facilities assessment (Gov. Code, § 70373) under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). I believe that *Dueñas* was wrongly decided.[1] Therefore, I respectfully dissent.

## A. *The* Dueñas *Decision*

In *Dueñas*, Division 7 of the Second Appellate District held that due process requires the trial court (1) to conduct a hearing to ascertain a defendant's ability to pay before it imposes a court operations assessment or a court facilities assessment and (2) to stay execution of any restitution fine (Pen. Code, § 1202.4) unless and until it holds an ability-to-pay hearing and concludes that the defendant has the ability to pay the restitution fine. Because defendant challenges only the imposition of the court operations and court facilities assessments, I confine my discussion to those fees.[2]

---

[1] The Attorney General "does not take issue with the *Dueñas* opinion insofar as it holds the imposition of assessments for court operations and court facilities may not be imposed where a defendant demonstrates the inability to pay . . . ." To the extent that the Attorney General is conceding that *Dueñas* was correctly decided as to those assessments, we are not bound to accept that concession and must not do so if we conclude that it is based on an erroneous understanding of the law. (*Desny v. Wilder* (1956) 46 Cal.2d 715, 729.) For the reasons set forth in this dissent, I would decline to accept the Attorney General's apparent concession.

[2] It is worth noting, however, that *Dueñas*'s conclusion that the restitution fine imposed under Penal Code section 1202.4 "punishes indigent defendants in a way that it does not punish wealthy defendants" apparently is limited to cases in which probation is granted. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1170.) In that circumstance, payment of the restitution fine must be made a condition of probation. (Pen. Code, § 1202.4, subd. (m).) *Dueñas* reasoned that those who "successfully fulfill[] the conditions of probation for the entire period of probation [generally have] an absolute statutory right to have the charges against [them] dismissed. (Pen. Code, § 1203.4, subd. (a)(1).)" (*Dueñas*, *supra*, at p. 1170.) Indigent probationers, who cannot pay the restitution fine
(continued)

Court facilities assessments (Gov. Code, § 70373) and court operations assessments (Pen. Code, § 1465.8, subd. (a)(1)) are statutorily required to be imposed on every criminal conviction (except for parking offenses) without reference to the defendant's ability to pay. (*Duenas*, *supra*, 30 Cal.App.5th at p. 1164.) The purpose of each assessment is to generate court funding. (Gov. Code, § 70373, subd. (a)(1) ["To ensure and maintain adequate funding for court facilities, an assessment shall be imposed on every conviction for a criminal offense . . ."]; Pen. Code, § 1465.8, subd. (a)(1) ["To assist in funding court operations, an assessment of forty dollars ($40) shall be imposed on every conviction for a criminal offense . . ."].) The assessments are enforceable as civil judgments.

The *Dueñas* court noted that " '[c]riminal justice debt and associated collection practices can damage credit, interfere with a defendant's commitments, such as child support obligations, restrict employment opportunities and otherwise impede reentry and rehabilitation.' " (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1168.) In view of "[t]hese additional, potentially devastating consequences suffered only by indigent persons," *Dueñas* concluded that Government Code section 70373 and Penal Code section 1465.8, subdivision (a)(1) effectively impose "additional punishment for a criminal conviction for those unable to pay." (*Dueñas*, *supra*, at p. 1168.) Based on that conclusion, the court reasoned that imposing these assessments without a determination that the defendant has the ability to pay them is "fundamentally unfair" and "violates due process under both the United States Constitution and the California Constitution. (U.S. Const. 14th Amend.; Cal. Const., art. I, § 7.)" (*Ibid*., fn. omitted.)

---

and thus cannot fulfill the conditions of their probation, are denied that right solely by reason of their poverty, *Dueñas* reasons. (*Id*. at pp. 1170-1171.)

### B.	Dueñas *Was Wrongly Decided*

For its view that the imposition of additional punishment on the indigent solely on the basis of their poverty violates due process, the *Dueñas* court relied on *Griffin v. Illinois* (1956) 351 U.S. 12 and its progeny.  At issue in *Griffin* was an Illinois law requiring all criminal defendants not sentenced to death to pay for a trial transcript in order to appeal.  A plurality of the United States Supreme Court held the state law unconstitutional, relying on both the Due Process and Equal Protection Clauses (*id.* at p. 18), which the Court explained require "equal justice."  (*Id.* at p. 19 ["There can be no equal justice where the kind of trial a man gets depends on the amount of money he has.  Destitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts"].)  Justice Frankfurter, concurring in the judgment in *Griffin*, relied on equal protection principles.  (*Id.*, at p. 23 (conc. opn. of Frankfurter, J.).)  The Supreme Court subsequently described *Griffin* and other cases invalidating "state-imposed financial barriers to the adjudication of a criminal defendant's appeal" as "stand[ing] for the proposition that a State cannot arbitrarily cut off appeal rights for indigents while leaving open avenues of appeal for more affluent persons."  (*Ross v. Moffitt* (1974) 417 U.S. 600, 607.)

That "principle has not been confined to cases in which imprisonment is at stake."  (*M.L.B. v. S.L.J.* (1996) 519 U.S. 102, 111 (*M.L.B.*).)  *Mayer v. Chicago* (1971) 404 U.S. 189 (*Mayer*) involved an indigent defendant convicted on non-felony charges and subjected to a fine, not imprisonment.  The *Mayer* Court rejected the argument that *Griffin* was distinguishable because it involved a defendant "sentenced to some term of confinement," explaining that *Griffin* set forth "a flat prohibition against pricing indigent defendants out of as effective an appeal as would be available to others able to pay their own way."  (*Id.* at pp. 196-197.)  The Court explained that "[t]he invidiousness of the discrimination that exists when criminal procedures are made available only to

3

those who can pay is not erased by any differences in the sentences that may be imposed." (*Id*. at p. 197.)

In *M.L.B.*, the Supreme Court extended *Griffin* to an appeal from an order terminating parental rights. The *M.L.B.* Court characterized *Griffin* and *Mayer* as "decisions concerning access to judicial processes" involving "[t]he equal protection concern [raised by] . . . fencing out would-be appellants based solely on their inability to pay core costs" and "[t]he due process concern . . . [of] the essential fairness of the state-ordered proceedings anterior to adverse state action." (*M.L.B.*, *supra*, 519 U.S. at p. 120.) The Court reaffirmed "the general rule . . . that fee requirements ordinarily are examined only for rationality," and noted that "[t]he State's need for revenue to offset costs, in the mine run of cases, satisfies the rationality requirement [citation] . . . ." (*Id*. at p. 123.) But the Court concluded that its "cases solidly establish two exceptions to that general rule. The basic right to participate in political processes as voters and candidates cannot be limited to those who can pay for a license. Nor may access to judicial processes in cases criminal or 'quasi criminal in nature, [citation] turn on ability to pay." (*Id*. at p. 124.)

The foregoing cases establish that principles of due process and equal protection bar states from conditioning access to the courts on ability to pay, thereby effectively denying such access to the indigent. *Dueñas* did not involve fines or fees required to be paid in order to access judicial processes. Nor does a convicted person's inability to pay a court operations assessment or a court facilities assessment in any way impact that person's ability to access the courts.

*Dueñas* also relied on a line of cases applying *Griffin* to strike down as unconstitutional state laws allowing the incarceration of indigent convicted defendants solely because of their inability to pay a fine. (See *Williams v. Illinois* (1970) 399 U.S. 235, 244 [relying on *Griffin* and holding that state scheme permitting indigent defendants to be incarcerated beyond the statutory maximum term for their offense because of

4

nonpayment of a fine violated the Equal Protection Clause]; *Tate v. Short* (1971) 401 U.S. 395, 399 [Equal Protection Clause precludes a state from converting a fine imposed under a fine-only statute into a jail term solely because the defendant is indigent and cannot immediately pay the fine in full]; *Bearden v. Georgia* (1983) 461 U.S. 660, 665, 672 [revocation of defendant's probation for failure to pay a fine or restitution, "absent evidence and findings that the defendant was somehow responsible for the failure or that alternative forms of punishment were inadequate," "would be contrary to the fundamental fairness required by the Fourteenth Amendment"]; *In re Antazo* (1970) 3 Cal.3d 100, 104 [holding that the practice of imprisoning indigent convicted defendants for nonpayment of fines constituted "an invidious discrimination on the basis of wealth in violation of the equal protection clause of the Fourteenth Amendment"].) Significantly, failure to pay the court operations and court facilities assessments does not result in jail time, but in a civil judgment.[3] Therefore, unlike the laws at issue in *Williams*, *Tate*, *Bearden*, and *Antazo*, the statutes at issue here and in *Dueñas* deprive no one of their fundamental right to liberty based on their indigence.

In sum, "the 'fundamental fairness' principles of due process and equal protection originating in *Griffin* have been applied [by the United States Supreme Court] when either incarceration or access to the courts, or both, is at stake." (*Mendoza v. Garrett* (D. Or. 2018) 358 F.Supp.3d 1145, 1171 (*Mendoza*); see *Fowler v. Benson* (6th Cir. 2019) 924 F.3d 247, 260-261 [finding *Griffin* and its progeny inapplicable to constitutional challenge to state scheme permitting suspension of an indigent person's

---

[3] In *Dueñas*, the trial court told the defendant that she could "save money and convert [a] $300 [fine] to 9 days of county jail," and her counsel said, " 'Yes. She doesn't have the ability to pay.' " (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1162.) However, the fact that Duenas apparently was deprived of her liberty for inability to pay was not the basis for the court's decision, nor was it mandated by the challenged statutes. Defendant in this case does not claim he was incarcerated due to his claimed inability to pay the assessments.

5

driver's license for unpaid court debt, reasoning that *Griffin* applies only where "fundamental liberty interests" are implicated].) *Dueñas* did not involve the right to access the courts, the defendant's liberty interests, or any other fundamental right. (See *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1039, conc. opn. of Benke, J. ["the imposition of the two assessments and one restitution fine on the defendant in *Dueñas* is [not] an issue of access to our courts or justice system, as was the case in *Griffin* and similar authorities" and "the fines or fees imposed on the defendant in *Dueñas* [did not] satisf[y] the traditional due process definition of a taking of life, liberty or property"].) The same is true of the case at bar. Accordingly, *Dueñas* represents a significant extension of *Griffin*'s principles.

In my view, that extension was unwarranted. With respect to the court facilities and court operations assessments at issue here, *Dueñas* expressed concern about the "potentially devastating consequences" associated with nonpayment of an outstanding debt, including poor credit, inability to pay child support, disruption of employment by aggressive collection tactics, and financial insecurity. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1168.) But such collateral consequences are not "punishment," in the traditional sense of the word.[4] Instead, they are illustrations of the disproportionate burden fines can have on the poor.

The United States Supreme Court "has not held that fines must be structured to reflect each person's ability to pay in order to avoid disproportionate burdens," noting instead that the consideration of "the defendant's ability to pay" generally is "guided by sound judicial discretion rather than by constitutional mandate." (*San Antonio*

---

[4] Our Supreme Court recently noted that " '[a]s a legal term of art, "punishment" has always meant a "fine, penalty, or confinement inflicted upon a person *by the authority of the law and the judgment and sentence of a court*, for some crime or offense committed by him." ' [Citation.]" (*People v. Ruiz* (2018) 4 Cal.5th 1100, 1107, italics added.)

6

*Independent School Dist. v. Rodriguez* (1973) 411 U.S. 1, 22 [applying the Equal Protection Clause].)  And, in *M.L.B.*, the Court indicated that the *Griffin* through *Bearden* line of cases applies only to "[s]anctions . . . [that] are not merely *disproportionate* in impact[, but r]ather, . . . are wholly contingent on one's ability to pay, and thus 'visi[t] different consequences on two categories of persons,' [citation]; they apply to all indigents and do not reach anyone outside that class." (*M.L.B.*, *supra*, 519 U.S. at pp. 126-127.)  The assessments at issue in *Dueñas* and here, and even the associated collateral consequences noted by the court in *Dueñas*, are of the sort that reach the indigent and non-indigent alike, and have varying impact based on wealth.  As such, the *Griffin* through *Bearden* line of cases does not govern.

Rather, I believe that any due process challenge to the court facilities and court operations assessments is subject to rational basis review.  I express no opinion as to whether the statutory scheme imposing assessments regardless of ability to pay has a rational basis, given that issue has not been explored in the briefing in this case or in *Dueñas* itself.[5]

---

[5] *Dueñas* might be read as concluding that the statutes at issue lack a rational basis; the court stated that "[i]mposing unpayable fines on indigent defendants is not only unfair, it serves no rational purpose, fails to further the legislative intent, and may be counterproductive." (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1167.)  But that conclusory statement does not account for the fact that, under rational basis review, " '[a] classification is not arbitrary or irrational simply because there is an "imperfect fit between means and ends" ' [citation], or 'because it may be "to some extent both underinclusive and overinclusive" ' [citations]." (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 887.)  I question whether the imposition of fees on *all* convicted defendants, regardless of ability to pay (or, relatedly, likelihood of collection), is irrational or merely overinclusive.  (See *Mendoza*, *supra*, 358 F.Supp.3d at p. 1175 ["that the statute may be overinclusive by its enforcement as to indigent traffic debtors with no means of paying the fine, does not, under rational basis review, render it unconstitutional"].)  But that is a question for another day.

*Dueñas* makes a compelling argument that the imposition of the court operations and court facilities assessments without consideration of a defendant's ability to pay is bad policy. But that is an issue best left to the Legislature.

For the foregoing reasons, I would affirm the judgment.

I DISSENT:


_____
ELIA, J.


People v. Santos
H045518

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. C1758098 |
| Trial Judge: | Hon. Eric S. Geffon |
| Counsel for Plaintiff/Respondent:<br>The People | Xavier Becerra<br>Attorney General<br><br>Melissa A. Meth<br>Deputy Attorney General |
| Counsel for Defendant/Appellant:<br>John Alves Santos | Under appointment by the Court of Appeal<br>Lori A. Quick |

People v. Santos
H045518